UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
GAETANO D'ATTORE,

             Plaintiff,         REPORT & RECOMMENDATION

          -against-           10 Civ. 1782 (JSR) (MHD)

CITY OF NEW YORK ET AL.

         Defendants
-------------------------------x

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Pro se plaintiff Gaetano D'Attore filed this lawsuit against
various employees and officials of the New York City Department of
Correction, as well as against the City, seeking damages for
purported constitutional violations. According to the amended
complaint, D'Attore alleges that on August 13 and 15, 2009, staff
members at the Otis Bantum Correctional Facility on Rikers Island
yelled at him, threatened him verbally and with the waving of a can
of mace, and, at one point, manhandled him. The pleading does not
suggest that plaintiff was injured by defendants (hurt feelings
aside).

After some delay, plaintiff served most of the defendants, and
counsel for those defendants served him with interrogatories and

1

document requests.[1] Despite the passage of much time, defendants received no responses from plaintiff and, accordingly, they have moved at several stages to dismiss the complaint for plaintiff's failure to prosecute and his violation of court orders. Plaintiff has opposed defendants' motion, but has apparently not cured his discovery defaults. Given the prolonged nature of his violations, which are not meaningfully explained or justified, we recommend that the motion to dismiss be granted.

Prior Proceedings

Plaintiff's original complaint was filed on March 5, 2010, but the District Court directed that plaintiff file an amended complaint within sixty days to correct various pleading deficiencies. (Order, dated Mar. 5, 2010 (docket no. 3)). Ultimately, plaintiff complied, filing his amended complaint on May 6, 2010. Plaintiff accomplished service of process on all but two defendants -- defendants Spencer and Salmon[2] -- and those two were

---

[1] Though defendants did not initially supply the court with copies of those discovery requests, they have since remedied that omission. (See Ass't Corp. Counsel Farrar's Sept. 21, 2012 letter to Ct.).

[2] Capt. Salmon is also the lead defendant in another suit by D'Attore, D'Attore v. N.Y.C. Dep't of Corr., 10 Civ. 815 (JSR)(MHD), also before this court.

2

later dismissed based on plaintiff's failure to serve them. (Order, dated Dec. 16, 2010 (docket no. 26); Order, dated Apr. 19, 2011 (docket no. 36)).

The served defendants filed their answer on November 8, 2010. We conducted a conference by telephone on January 5, 2011, by which time defendants had supplied their required initial disclosures, and we issued a scheduling order the same day directing that discovery be completed by April 30, 2011, that summary-judgment motions be served and filed by May 16, 2010, and, in the absence of such motions, that the parties submit a joint pre-trial order by June 15, 2011. (Order, dated Jan. 5, 2011 (docket no. 28)).

Defendants served a set of interrogatories and document requests on plaintiff by January 20 or 21, 2011. (Defs.' Mem. of Law 1; Ass't Corp. Counsel Farrar's Mar. 25, 2011 letter to Ct. at 2). Plaintiff failed to respond and, accordingly, on March 25, 2011, defendants applied to the court by letter, reporting plaintiff's default and requesting an order that would direct plaintiff to serve responses to defendants' interrogatories and document requests by a date certain. (Id.). We issued an endorsed order that day -- March 25, 2011 -- directing plaintiff to serve his responses by April 15, 2011 and specifying that, if he failed

3

to do so, defendants would be authorized to move for "appropriate relief." (Endorsed Order, dated Mar. 25, 2011 (docket no. 33)).

Plaintiff ignored this order, providing no responses to defendants during the specified time. Accordingly, counsel for defendants again wrote to the court, noting plaintiff's violation of the March 25, 2011 order and his continued discovery default, and requesting dismissal of the complaint under both Rule 41(b), for failure to prosecute, and Rule 37(b)(2), for violation of discovery orders. (Ass't Corp. Counsel Farrar's Apr. 22, 2011 letter to Ct.). We responded by endorsed order providing that "[i]f defendants wish[ed] to seek dismissal, they [were] to do so by formal motion." (Endorsed Order, dated Apr. 22, 2011 (docket no. 38)).

In the wake of the April 22, 2011 order, defendants filed a motion to dismiss, dated May 2, 2011. Again, they reported that plaintiff was in complete default on his basic discovery obligations, and noted his failure to serve the two defendants who had since been dismissed from the case as a consequence. They further argued that the prolonged pattern of non-compliance by D'Attore justified dismissal both for violation of court discovery orders and for failure to prosecute the case. (Defs.' Mem. of Law

4

2-6).[3]

We promptly issued a scheduling order authorizing plaintiff to respond to defendants' motion to dismiss by no later than May 24, 2011, with reply papers due by May 31, 2011.

Although plaintiff sent us a set of papers in the wake of defendants' motion (Pl.'s "Order to Show Cause," May 8, 2011), his submission consisted of little more than complaints about his physical disabilities and purported mistreatment in state prison. Plaintiff's papers did not respond to the substance of defendants' motion, most notably to defendants' representation that plaintiff was in unexcused default on his discovery obligations and in violation of the court's order directing him to supply discovery responses by April 15, 2010. At best, plaintiff's submission might be interpreted as a claim that his physical disabilities prevented him from complying with the court's order. Defendants provided a

---

[3] It bears mention that, although plaintiff had not responded by this time either to defendants' complaints about his discovery quiescence or to their request for court relief, he was not entirely inactive. Indeed, he contacted the court in writing on several occasions regarding the contested dismissal of Capt. Salmon from the case and matters related to his treatment in prison. (E.g., Pl.'s undated letter to Ct., rec'd May 4, 2011; Pl.'s "Reply," dated Mar. 31, 2011; see also Pl.'s Jan. 22, 2011 letter to Ct.).

reply memorandum, dated May 20, 2011, pointing out the irrelevance of plaintiff's response and noting that he was litigating numerous cases in this district and submitting substantial papers in the very period when he seemingly claimed to be too disabled to respond to discovery and court orders. (Defs.' Reply Mem. of Law 2-4).

We issued an order on June 14, 2011 reciting this history and observing that, "[a]lthough dismissal might be justified at this stage, we will withhold acting on the motion for thirty days in order to permit plaintiff to serve his responses to defendants' interrogatories and document requests." We further warned plaintiff that, if he failed to comply by July 14, 2011, we would be prepared to act on the motion and would "in all likelihood recommend granting it." (Order, dated June 14, 2011 (docket no. 48) at 2).[4]

By letter, dated July 15, 2011, counsel for defendants advised the court that plaintiff had still failed to provide the required discovery responses, though during the same time period he had been busy on other fronts, including filing a complaint with the

_____

[4] On June 28, 2011, we received still another submission by plaintiff in purported opposition to the dismissal motion. (Pl.'s "Answer to Oppos's Reply Memorandum," May 25, 2011). It, too, simply complained at some length about his treatment in state prison.

6

Departmental Disciplinary Committee of the Appellate Division concerning a City attorney defending against another of his lawsuits, filing one or more other suits, and filing an interlocutory appeal to the Second Circuit. Based on plaintiff's continuing violation of discovery orders and his asserted failure to prosecute his case, defendants requested that the complaint be dismissed. (Ass't Corp. Counsel Farrar's July 15, 2011 letter to Ct.). Notwithstanding this indication of plaintiff's continuing default -- a representation that plaintiff did not dispute -- we waited until the end of August 2011 and then requested written confirmation from defendants' attorney as to whether plaintiff was still non-compliant. This inquiry triggered a letter from defendant's counsel on August 31, 2011 and a declaration of counsel, dated September 1, 2011, reiterating that plaintiff had failed to comply with our prior discovery orders but had sent counsel a stack of miscellaneous irrelevant papers, including a written grievance against various counsel at the Law Department. (Asst. Corp. Counsel Farrar's Aug. 31, 2011 letter to Ct.; Farrar Supp. Decl. ¶ 5, Sept. 1, 2011).

This exchange was shortly followed by one last volley on both sides. Plaintiff filed a document, dated September 12, 2011, labeled as an "AFFIRMATION IN OPPOSITION", which simply annexed a

7

set of documents from both this lawsuit and another one that plaintiff was pursuing, none of which addressed plaintiff's default with respect to the requirement that he respond to defendants' interrogatories and document requests.[5] Defendants responded one last time, pointing out, in a declaration of counsel, that the latest submission by plaintiff was non-responsive and that he remained in violation of the cited court orders and discovery rules. (Farrar 2d Supp. Decl. ¶¶ 8-9, Oct. 4, 2011).

The final submission was by plaintiff, who proffered an affirmation, dated October 7, 2011, in which he complained that defendants had not provided some unspecified discovery that he had sought and, for the first time, suggested, implausibly, that he did not "recall" any "new discovery requests" from defendants since October 26, 2010. He went on to ask that the court enter a default judgment in his favor, albeit on grounds that were quite obscure. (Pl.'s Aff. in Opp'n 2-4).

---

[5] One exhibit had copies of medical releases that plaintiff had executed at the outset of the lawsuit, which were not at issue in defendants' Rule 37 and 41 applications to the court. (Pl.'s Aff. in Opp'n Ex. A).

ANALYSIS

Defendants seek dismissal of the complaint with prejudice. A review of the record reflects that plaintiff has repeatedly failed to provide the documents sought or to otherwise respond to defendants' document request, and has similarly failed to respond to defendants' interrogatories. The court has twice ordered him to respond both to the defendants' document requests and to their interrogatories and plaintiff has ignored those orders. Mr. D'Attore's persistence in violating both his discovery obligations and the court's orders implicates the court's authority under both Fed. R. Civ. P. 37(b)(2) and 41(b), as well as under Rule 16(f). The court specifically ordered plaintiff to produce the documents and answer the interrogatories by April 15, 2011, then extended that deadline until July 14, 2011, in effect giving him substantially more time to cure his default. This he nonetheless failed to do.

Under the terms of Fed. R. Civ. P. 37(b)(2), 41(b), and 16(f), the court has broad authority to impose appropriate remedies to cure the harm visited on the discovering party and to deter other litigants from similarly refusing to comply with the court's scheduling and discovery directives. See, e.g., Nat'l Hockey League

9

v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam);
Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107
(2d Cir. 2002); Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67,
71, 73 (2d Cir. 1988).

Rule 37(b)(2) authorizes a range of sanctions, including
dismissal, that may be imposed on a party for failing to comply
with a court order. Similarly, Rule 41(b) authorizes dismissal for
plaintiff's failure to comply with a court order. Dismissal is, of
course, "'a harsh remedy to be utilized only in extreme
situations.'" LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206,
209 (2d Cir. 2001) (quoting Theilmann v. Rutland Hosp., Inc., 455
F.2d 853, 855 (2d Cir. 1972) (per curiam)). Nonetheless,
dispositive measures are certainly within the court's arsenal, if
needed, to remedy otherwise irremediable prejudice or to address
persistent bad-faith pre-trial conduct by a litigant. See, e.g.,
Friends of Animals, Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334
(2d Cir. 1997); Valentine v. Museum of Modern Art, 29 F.3d 47, 49-
50 (2d Cir. 1994) (quoting Bobal v. Renssalaer Polytechnic Inst.,
916 F.2d 759, 764 (2d Cir. 1990)); Rotblut v. Thaler, 1998 WL
846124, at *6 (S.D.N.Y. Dec. 3, 1998).

The pertinent considerations in choosing a sanction under Rule

10

37(b)(2) include "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party has been warned of the consequences of his non-compliance." Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)). Additionally, we examine the prejudicial impact of the non-compliance. See, e.g., Martinez v. E&C Painting, Inc., 2008 WL 482869, at *4 (S.D.N.Y. Feb. 21, 2008); New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp., 2000 WL 97358, at *5 (S.D.N.Y. Jan. 27, 2000).

When the court considers dismissal under Rule 41(b), it looks to a parallel set of factors. These include "(1) the duration of the plaintiff's failures, (2) whether plaintiff ha[s] received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4)... [consideration of] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard... and (5)... the efficacy of lesser sanctions." LeSane, 239 F.3d at 209; Sanders v. John Does, 2008 WL 2117261, at *3 (S.D.N.Y. May 15, 2008).

11

We address these overlapping considerations more or less in numerical order and conclude that dismissal is appropriate in this case.

## 1. Length of Default & Willfulness

Plaintiff was asked for production of the disputed documents and other items, as well as complete answers to interrogatories, in mid-January 2011. As of the date of this Report and Recommendation, he has still not complied with any aspect of those discovery requests. In short, the period of his default is lengthy.

It also bears emphasis that his failure to comply has persisted in the face of a series of court orders requiring that he produce the requested documents and provide interrogatory answers. Furthermore, although plaintiff has highlighted the fact that he suffers from some physical disabilities, he has never represented that he was unable to comply with the court's orders and, indeed, his active filing of a multiplicity of submissions in this and related cases, as well as grievances directed to the Appellate Division during the relevant period, amply demonstrates that he is fully able to churn out documents when he wishes to do so. Plainly, then, his refusal to fulfill his discovery obligations must be

12

viewed as willful, as well as prolonged.

## 2. Notice

Plaintiff has been on notice that a failure on his part to comply with the discovery rules could trigger sanctions up to and including dismissal of his complaint. Defendants have sought on a number of occasions to have the court dismiss the complaint based on plaintiff's refusal to respond to discovery requests and, indeed, in the court's June 14, 2011 order we noted that, although we were giving plaintiff further time to comply, if he failed to do so by July 14, 2011 we were "likely" to recommend dismissal. This order was followed by plaintiff's continued non-compliance, and defendants subsequently requested on at least two more occasions that the dismissal threat be carried out, all to no avail in terms of eliciting plaintiff's compliance.

## 3. Prejudice

The prejudice to defendants from plaintiff's default appears to be substantial. The written discovery requests seek an array of documents and answers to basic questions pertaining to plaintiff's lawsuit. Moreover, the refusal of Mr. D'Attore to comply has

13

stalled the completion of this case for an extended period of time.
From such delay we may presume some measure of prejudice to
defendants. See, e.g., Shannon v. Gen. Elec. Co., 186 F.3d 186, 195
(2d Cir. 1999).


    4. Calendar Congestion


       Although we cannot say that this specific case is a major
contributor to the burden of the court's current calendar, there is
a broader institutional problem with letting Mr. D'Attore thumb his
nose at the court and the Federal Rules of Civil Procedure. His
defiance of court orders has undercut our ability to ensure the
prompt disposition of this case. That is not a trivial matter. The
goal of a "just, speedy and inexpensive determination of every
action" is stated in Fed. R. Civ. P. 1 and is embodied in the Civil
Justice Reform Act of 1990, 28 U.S.C. § 471 et seq., which requires
all federal courts to develop a civil-justice-expense-and-delay-
reduction plan to "ensure just, speedy, and inexpensive resolutions
of civil disputes." 28 U.S.C. § 471. In addition, to ensure
enforcement of the court's scheduling authority, Rule 16(f) arms
the court with the sanctions powers specified in Rule 37(b)(2).


       By violating the court's orders requiring him to provide

14

relevant information to defendants, Mr. D'Attore has thwarted our
ability to manage this litigation in an efficient and economical
manner. Were this behavior to be ignored, we would undermine the
stated institutional policies and leave to a litigant the choice of
whether to comply with court mandates.

### 5. Alternative Remedies

The remaining, and key, question is whether lesser steps than
dismissal of the complaint might be appropriate in these
circumstances. Further orders to plaintiff to comply are pointless,
because plaintiff has repeatedly proven willing to defy such
orders, as he so pleases. Moreover, such an approach, even if
coupled with a requirement that plaintiff reimburse defendants for
their expenses in seeking to enforce their rights under the
discovery rules, would be futile since plaintiff appears to have no
meaningful assets and, in any event, such an approach would leave
plaintiff -- even if he finally changed his tack and complied -- in
the position of having not only defied the court but substantially
delayed the litigation and undermined our ability to control our
calendar.

We of course recognize the abiding policy of the federal

courts to promote the determination of cases on their merits, if possible. See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172, 174 (2d Cir. 2001); Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995). Nonetheless, plaintiff, as a frequent and very contentious litigator, is fully aware of the perils of defying his obligations set forth by the Federal Rules of Civil Procedure and by court orders. In this case, we are left with no viable alternative other than dismissal if we are to uphold the policies that animate those rules.


CONCLUSION


For the reasons stated, we recommend that defendants' motion to dismiss with prejudice be granted.


Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, 500 Pearl Street, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York. Failure to file timely objections may constitute a

16

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Dated: New York, New York
       September 27, 2012

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of this Report & Recommendation are being mailed today to:

Mr. Gaetano D'Attore
10-A-5728
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

Brian J. Farrar, Esq.
Assistant Corporation Counsel
 for the City of New York
100 Church Street
Room 3-312
New York, New York 10007
Fax: (212) 788-0367

17